## Carl Construction Company v. Miller et al.

(Decided June 17, 1930.)

ROBERT C. SIMMONS for appellant.

J. RICHARD UDRY for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Appellees brought suit against appellant in the Kenton circuit court seeking to recover $1,690, that is, $1,489, which they claimed was due for work performed under a contract, and $201 damages for breach of the contract. The basis of the recovery, as alleged in the petition, was that in July, 1926, they entered into a verbal contract with appellant by the terms of which they were to do all the excavating and back filling necessary in the erection and construction of the junior high school building adjoining the Holmesdale High School in the city of Covington, for which work they were to receive 50 cents per cubic yard for all material removed and back filled; that the excavating amounted to 9,100 cubic yards and the back filling 500 cubic yards; that they began the work in accordance with the contract, and that they had been paid for the work done $2,641; that on or about the latter part of October, 1926, the appellant wrongfully and in violation of the contract placed a steam shovel and workmen on said undertaking, and began excavating, and that about the first of November, 1926, appellees received a written order from appellant to remove their equipment and cease work; that at the time they were directed to cease work they had excavated 8,260 cubic yards, and had been paid the sum of $2,641, leaving a balance due them of $1,489; that, if they had been allowed to complete the work, they would have been entitled to receive 50 cents per cubic yard for 1,340 yards; and that their profit would have been $201 on that yardage.

Appellant filed an answer and counterclaim, denying some of the allegations in the petition and admitting others. It admitted the making of a contract, but denied that there were only 9,100 cubic yards of excavating, or 500 cubic yards of back filling to be done; it admitted the payment of $2,641 to appellees, but denied that, at any time, it wrongfully, or in violation of its contract, placed the steam shovel and workmen, or either, on the job and began the excavating work, but it admits that about November 1, 1926, it notified appellees to remove their

equipment and to cease work. It denied that it was indebted to appellees in the sum of $1,489, or any sum, by reason of the work which was done by them, or that they had been damaged $201, or any sum, by the notice to them to cease work. By way of counterclaim it was alleged by appellant that appellees failed to do the work in a proper and expeditious manner, and that they abandoned the work, resulting in the forced necessity of its notifying them to remove their equipment so that it might complete the work; that it did complete the work, and to do so it was necessary for it to engage a steam shovel at a cost of $933.20, a reasonable and proper cost, and that it was necessary for it to employ men at a cost of $4,074.76, and that the work was still uncompleted. The prayer of the appellant was for a dismissal of the petition and that it recover $5,007.96, subject to a credit of $1,489, the amount claimed by appellees. A reply was filed making an issue on the counterclaim. An amended answer and counterclaim was filed which served no purpose, in the main, other than to make the original counterclaim more specific, and to allege more definitely the work which appellant was compelled to do; and the necessity for an early completion of the work after the contract with appellees was made in July.

Appellant alleged, in its amended counterclaim, that appellees had excavated no more than 5,500 cubic yards, for which they were entitled to receive $2,750, and they had actually been paid $2,641; consequently, the credit to which appellees were entitled on the amount expended by appellant after it completed the work was not what was admitted in the prayer of the counterclaim. The counterclaim, after making deductions and adjustments, alleged that there was due appellant a net sum of $2,-450.94, and that nothing was due appellees. There was a motion to strike certain parts of the amended counterclaim, but there is nothing to indicate any ruling on that motion, and it appears that no reply was filed to the amended answer and counterclaim.

A trial before a jury resulted in a judgment in favor of appellees for $579.50. A motion for a new trial was based upon errors concerning instructions, but, an amended motion was filed relying on other grounds, one of which was newly discovered evidence, and another that the verdict was against the weight of the evidence. The motion and supplemental motion for a new trial were overruled.

The case is one of complicated facts, and the record is such as to require careful attention, but we are without the benefit of a brief filed in behalf of appellees. Although this might be considered as a tacit admission that there were errors in the record requiring reversal, yet we cannot so treat it, and must, with the aid of brief for appellant, go through the record and find out, if we can, whether there are reasons for upholding the judgment which appellees do not attempt to support in this court by a brief filed in their behalf.

The evidence discloses that Northcutt Bros. had the contract for the erection of the school building mentioned above and they sublet to appellant the excavating and back filling work, who, in turn, sublet it to appellees. By the terms of the contract that appellant had with Northcutt Bros. they were to complete the work within a certain time, else pay a penalty for each day the work remained uncompleted thereafter. It was testified by Mr. Carl that this fact was well known to appellees at the time they made the contract, and that he was assured by them that they would complete the work in about eighteen days. As alleged in the petition, the contract was verbal but it was reduced to writing for the purpose of signing, but for some unexplained reason it never was signed. It is alleged in the petition, and also proven by Mr. Carl, representing appellant, that appellees were to do all of the excavating and back filling, that is, they were to excavate the cellar, dig trenches, do the back filling and grading. The trenches were the footings for the foundation, and all of this work was shown on the plans furnished to appellees when they commenced the work. It is not entirely certain from the evidence the amount of excavating which was required. It may have been slightly less than alleged in the petition. The work was commenced by appellees immediately after the making of the contract, but it was not pursued with diligence, according to the evidence for appellant. Instead of its being completed in eighteen days, it had not been completed by the latter part of October. The partners, Miller and Parish, from the evidence offered by appellant, seemed to have disagreed about matters, and thereby delayed the work. Appellant was compelled to pursue its work with diligence; consequently they were handicapped by the failure of appellees to do the excavating. It is made to appear by the evidence for appellant that appellees had substantially abandoned all work

at the time it was taken over by appellant. Appellant furnished money for the work, although not required to do so, and Mr. Carl testified that on one occasion, when he advanced money to Parish, Miller forbade his doing so again.

It appears that another difficulty arose for which appellees were in no way responsible. They found limetone rock unexpectedly, and that made the expense of excavating much greater. The evidence for appellant shows that the total amount of excavating was about 8,-800 cubic yards, and that appellees excavated about 5,-500, leaving about 3,300 yet to be done, and which was done by appellant. That which was done by appellant was more expensive than the other because of the limestone rock.

There is some testimony to the effect that the work which was done by appellees was improperly and negligently done. The evidence for appellees is to the effect that the amount of excavating to be done was 9,100 cubic yards, and the back filling was 500 cubic yards, and that they were to receive 50 cents per cubic yard, or a total of $4,800 for doing the work. They show, by their evidence, the unusual conditions which arose, and there is no doubt that the weather turned out to be very bad, and that the discovery of limestone rock was unexpected. There was a flat contradiction as to the amount of excavating which was done by appellees, they claiming that it amounted to about 8,400 cubic yards. There is some effort to show that they were not to do all of the excavating, but the evidence in this respect contradicts the allegations of the petition.

Taking the evidence as a whole, it is reasonably certain that the cost of completing the work which appellant was compelled to pay was more than appellees even claimed was due them. If that is true, the verdict of the jury must be against the weight of the evidence. Appellees were entitled to be paid the amount according to the contract price which the excavating actually done by them amounted to. The amount which had been paid was not disputed. If they unreasonably delayed the work, or did not pursue it with reasonable diligence, it is a question for the jury whether appellant was entitled to recover on its counterclaim the difference between the contract price for doing the work and the amount which they actually paid in doing the work as ordinarily prudent men would have done it after they took over the

work. The court should so frame his instructions as to first submit to the jury whether the appellees had abandoned the work, or whether they had diligently pursued it in accordance with the terms of the contract. If they had, and the jury should so find, they were entitled to recover any sum which they had not been paid based on the contract price. If they had not, appellant was entitled to recover on its counterclaim any sum it had expended above the contract price, if it was reasonably and judiciously expended and was necessary in carrying on the work as a reasonably prudent man would have carried it on under all of the circumstances, subject to a credit, if any, of any sum that appellees were entitled to by reason of the work actually done and not paid for. It may be that the instructions submitted these questions to the jury, but they are difficult to understand, and should be so simplified as to enable a jury of ordinary men to reach a conclusion. It turned out to be a hard contract for appellees, and the sympathy of the jury was evidently with them, and the verdict which was returned is contrary to the weight of the evidence.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.