Raphael J. CHERVY and Dorothy E. Chervy, Libelants,

v.

PENINSULAR AND ORIENTAL STEAM NAVIGATION COMPANY, Ltd., and City of Long Beach, California, Respondents.

PENINSULAR & ORIENTAL STEAM NAVIGATION COMPANY, Ltd., Cross-Libelants,

v.

Raphael J. CHERVY and Dorothy E. Chervy, Cross-Respondents.

No. 62–1146.

United States District Court
S. D. California,
Central Division.

Nov. 20, 1964.

Musick, Peeler & Garrett, Los Angeles, Cal., for libelants.

Graham, James & Rolph, San Francisco, Cal., for respondents.

CURTIS, District Judge.

The court finds that libelants' status as passengers terminated the morning upon which the SS ARCADIA arrived at Long Beach. After libelants had left the ship and removed their luggage their rights to re-board the ship as passengers no longer existed. When they went aboard in the evening, they boarded not as passengers, but as guests. This being so, the respondents are en-

titled to rely upon the exculpatory provisions of the boarding pass as relieving them from ordinary acts of negligence.

■ Although the provisions of Title 46 U.S.C. § 183c prohibit the owners of vessels from inserting in any agreement to transport passengers, provisions purporting to relieve such owners from liability, such provisions were intended to apply as between common carrier and passengers. Moore v. American Scantic Line, 30 F.Supp. 843 (S.D.N.Y.1939), affirmed 121 F.2d 767 (2nd Cir. 1941). Arnstad v. United States, 68 F.Supp. 823 (W.D.Wash.1946). Language similar to that contained in § 183c has been held to apply only to passengers. Barrette v. Home Lines, Inc., 168 F.Supp. 141 (S.D.N.Y.1958); Mulvihill v. Furness, Withy & Co., 136 F.Supp. 201, (S.D.N.Y.1955).

■ The case of Lawlor v. Incres Nassau Steamship Line, Inc., 161 F. Supp. 764 (Mass.1958) cited by the libelants is not in point. The court said:

> "A carrier that contracts to take a passenger on a cruise stopping at a designated foreign port has a duty if the vessel anchors in that harbor to provide him with safe transportation, under adequate supervision, to and from the dock. The Valencia, D.C.D. Wash., 110 F. 221."

This is to say that the relationship of passengers and carrier, under that rule, exists from shore to ship and ship to shore. The opinion thereafter deals with the nature and extent of the duty of carrier to its passengers under circumstances quite dissimilar from the facts here in question.

In the present case the relationship of carrier to passenger had ceased and the libelant was a guest at the time of the injury.

■ The common law rule that because of public policy a common carrier cannot secure immunity from liability for its own negligence has no application when the carrier is acting outside of performance of its duty as a common carrier. Santa Fe, P. & P. Ry. Co. v. Grant Bros. Const. Co., 288 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787 (1912); Baltimore & Ohio S. W. Ry. Co. v. Voigt, 176 U.S. 498, 20 S.Ct. 385, 44 L.Ed. 560 (1899); Schiemann v. Grace Line, Inc., 269 F. 2d 596 (2nd Cir. 1959).

■■ The court therefore concludes that entertaining visitors on board ship is not a part of the obligation of the steamship company as a common carrier. This is a gratuitous service which a visitor may accept upon the terms and conditions under which it is offered, or he may decline. Exculpatory provisions such as those in the boarding pass are not, under the circumstances here existing, repugnant to public policy and may, therefore, be enforced.

Judgment shall therefore be for the respondents upon the libel, and since no evidence was produced at the time of trial upon the cross-libel, the same is hereby dismissed.

Respondents' attorneys shall prepare findings of fact, conclusions of law and judgment.